UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

GRIMMWAY ENTERPRISES, INC., a
California corporation doing business as
GRIMMWAY FARMS,

          Plaintiff,

vs.

B & B ORGANICS, INC., an Indiana
corporation; CYNTHIA G. BOYNTON, an
individual; and BRAD B. BOYNTON, an
individual,

          Defendants.

Case No. 3:19-CV-261-JD

## OPINION & ORDER

This matter is before the Court on Plaintiff Grimmway Enterprises, Inc.'s ("Grimmway") motion to enter default judgment against Defendants Cynthia G. Boynton and Brad B. Boynton ("Individual Defendants"). [DE 45]. Also before the Court is a motion for civil contempt against Defendant B & B Organics, Inc. ("B & B Organics"). [DE 13]. B & B Organics has not responded to the motion for civil contempt. Nor has any Defendant answered Grimmway's Complaint. The Court has reviewed the docket, motions, supporting documents, and the Individual Defendants' brief responses to the motion for default judgement.

## I. BACKGROUND

Grimmway, a California corporation, is in the business of buying and selling wholesale quantities of perishable agricultural commodities or produce. [DE 1 ¶¶ 1, 6]. Cynthia Boynton is the sole officer and stockholder in B & B Organics, an Indiana corporation. [DE 51-1 at 3]. In 2009, Grimmway and B & B Organics entered an agreement for the sale of produce products. [DE 5-2 at 11]. The agreement stated that "[i]n compliance with PACA regulations and statutory

1

trust provisions" any transactions entered into between Grimmway and B & B Organics should be paid "on or before 21 calendar days following the date of the shipment." *Id.* The agreement also notes that in the event B & B Organics fails to make a payment on time "finance charges will accrue on any past-due balance at the rate of 1.5% per month (18% per annum), or at the minimum rate of interest allowable by law" and B & B Organics will be responsible for collection costs, including attorneys' fees and costs, should a collection action become necessary. *Id.* The agreement was signed in April 2009 by the president of B & B Organics at the time, John Janesheski. *Id.*

Between October 17, 2018 through December 18, 2018, Grimmway sold B & B Organics $160,697.20 worth of produce, which B & B Organics accepted without objection. [DE 1 ¶¶ 10-11; DE 5-2 at 14]. Grimmway sent invoices to B & B Organics reflecting the agreed upon amounts owed by B & B Organics, which also included the language of their agreement and the period of time that payment was due. [DE 1-1]. B & B Organics and the Individual Defendants never denied receiving the invoices nor did they object to the terms and conditions stated in the agreement and invoices. [DE 1 ¶ 15].

After B & B Organics failed to pay their past-due invoices, Grimmway filed this action to enforce its rights as a beneficiary of B & B Organics under the PACA trust, 7 U.S.C. §499e(c), for breach of contract, and attorneys' fees. [DE 1]. Grimmway simultaneously filed an *ex-parte* motion for a temporary restraining order and a motion for preliminary injunction to prevent B & B Organics from dissipating the PACA trust assets. [DE 4; DE 5]. The Court granted the TRO on April 4, 2019 and the preliminary injunction on April 25, 2019. [DE 7; DE 18]. All Defendants were served with the Complaint, *Ex-Parte* Motion for a TRO, Motion for Preliminary Injunction, and the Court's order extending the TRO on April 4, 2019, via e-mail by Grimmway's attorney

and personally served Defendant Brad B. Boynton on behalf of all Defendants while he was at B & B Organics' business location on April 5, 2019. [DE 13-1 at 2, 6; DE 8; DE 9; DE 10]. Additionally, the Defendants were also served with the Court's order extending the TRO. [DE 13-1; DE 16]. Service of these documents is evidenced by an email response to Plaintiff's attorney by Defendants' potential attorney, Mark Telloyan, indicating that his clients were considering whether to file for bankruptcy. [DE 13-1 at 8, 10-11].

On April 17, 2019, thirteen days after the Court entered the TRO, Grimmway filed a motion for civil contempt against B & B Organics for violating the temporary restraining order by failing to produce several documents and various pieces of information required by the Order. [DE 13 at 2-3]. On April 26, 2019, the same day all Defendants were due to respond to Grimmway's Complaint, B & B Organics filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Indiana. Case No. 19-30729-hcd. After the Individual Defendants failed to respond in any capacity to Grimmway's Complaint, on May 6, 2019, upon motion from Grimmway, the Clerk entered default against the Individual Defendants for failure to plead or otherwise defend this action. [DE 22].

## II. DISCUSSION

Federal Rule of Civil Procedure 55 governs the entry of defaults and default judgments. *See Lowe v. McGraw-Hill Cos., Inc.*, 361 F.3d 335, 339 (7th Cir. 2004). Prior to obtaining a default judgment under Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a). *See Wolf Lake Terminals, Inc. v. Mut. Marine Ins. Co*., 433 F. Supp. 2d 933, 941 (N.D. Ind. 2005). Under Rule 55(a), the clerk is to enter the default of a party against whom a judgment is sought when that party has failed to plead or otherwise defend. *Yong-Qian Sun v. Bd. of Trs*., 473 F.3d 799, 811 (7th Cir. 2007). The clerk has done so here as to both Individual Defendants.

[DE 22]. Accordingly, the Court may now enter a default judgment under Rule 55(b)(2). However, the court must exercise its discretion in doing so. *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993). A default judgment is justified when "the defaulting party has exhibited a willful refusal to litigate the case properly," as evidenced by "a party's continuing disregard for the litigation and for the procedures of the court" and a "willful choice not to exercise even a minimal level of diligence." *Davis v. Hutchins*, 321 F.3d 641, 646 (7th Cir. 2003).

"In determining whether to enter a default judgment, the court may consider a number of factors including whether there is a material issue of fact, whether the default is largely technical, whether the plaintiffs were substantially prejudiced, and how harsh an effect a default judgment might have." *Wolf Lake Terminals*, 433 F. Supp. 2d at 941 (quoting Wright & Miller, 10A Federal Practice & Procedure § 2685 (3d ed. 1998)). Default judgment, however, is not automatic. Plaintiffs seeking default judgment must demonstrate that they are entitled to judgment as a matter of law. *Cass Cnty. Music Co. v. Muedini*, 55 F.3d 263, 265 (7th Cir. 1995). "In making this inquiry, the court must assume that the factual allegations are, by reason of the default, true." *Id.* at 265–66; *see also Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983) ("Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true.").

### *A. Grimmway is a valid PACA beneficiary of B & B Organics and preserved its PACA rights*

Perishable Agricultural Commodities Act, 1930 ("PACA") comprehensively regulates the nation's produce industry. 7 U.S.C. § 499a et seq. It authorizes the Secretary of Agriculture to license those who deal in "[f]resh fruits and fresh vegetables of every kind and character." 7 U.S.C. § 499a(b)(4)(A). PACA mandates that perishable agricultural commodities received by a

federally licensed dealer, as well as sales proceeds from such commodities, shall be held by the dealer in trust for the benefit of all unpaid suppliers of such commodities until full payment has been made. *Id.* § 499e(c)(2). "More simply put, the 'trust . . . requires the produce buyer to hold the proceeds from its sales of produce and use them to pay suppliers before using those funds to pay its . . . other liabilities.'" *Greg Orchards & Produce, Inc. v. Roncone*, 180 F.3d 888, 890 (7th Cir. 1999) (quoting *In re Lombardo Fruit and Produce Co.*, 12 F.3d 806, 809 (8th Cir. 1993)). PACA regulations provide that "[a]ny act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful." 7 C.F.R. § 46.46(d)(1). "Dissipation" is defined as "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions." *Id.* § 46.46(a)(2). The trust is created by operation of law whenever a dealer receives and accepts perishable commodities, so long as the supplier complies with the specific notice requirements set out in 7 U.S.C. § 499e(c)(3)–(4) and 7 C.F.R. § 46.46(f). PACA also gives produce suppliers priority over banks or other creditors who may have perfected security interests in the inventory and receivables of an insolvent produce dealer. *See Roncone*, 180 F.3d at 891. PACA makes it unlawful to breach the duties owed under the trust. 7 U.S.C. § 499b(4).

Here, Grimmway submits the Declaration of Pamela Terry, the Accounts Receivable Manager for Grimmway Farms [DE 5-2 at 2–6], which states that Grimmway:

- Is a produce dealer subject to PACA;
- Preserved its rights against B & B Organics as a trust beneficiary under PACA; and
- Has not been paid for perishable agricultural commodities it sold to B & B Organics totaling $160,697.20, as required by PACA.

In addition, Grimmway asserts in the same declaration that B & B Organics:

- Is in severe financial jeopardy, has offered excuses for non-payment, and even acknowledged not having the funds to satisfy the outstanding balance;
- Has either dissipated or threatened to dissipate the trust assets subject to PACA, 7 U.S.C. § 499e(c)(2); and is not or may not be in a position to pay Grimmway's PACA trust claim.

The Court reiterates here what it previously found in its order granting the TRO and the preliminary injunction. [DE 11; DE 18]. Grimmway is entitled to the benefits associated with a PACA trust as a licensed producer of perishable agriculture commodities and has preserved its ability to enforce the benefits of PACA through its outstanding invoices with B & B Organics (which is also a PACA licensee and therefore qualifies as a "dealer" as that term is defined by PACA). *See* 7 U.S.C. § 499a(b)(6). Grimmway's invoices include the language required by Section 499e(c)(4). The invoices include the terms of payment, which is also required by PACA. *Id.* § 499e(c)(3) ("When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed on invoices, accountings, and other documents relating to the transaction."). Here, the parties agreed to a payment time period of "21 calendar days following the date of the shipment." [DE 5-2 at 11]. Since this payment period is more than the Secretary of Agriculture's payment period,[1] in order to preserve its right in the trust assets, Grimmway must note the payments terms on the invoices—which it did. Every invoice sent to B & B Organics during the relevant time period indicates "Terms" as "FOB Net 21,"[2] which reflects the parties' original agreement. [DE 5-2 at 15-60].

---

[1] "Full payment promptly is the term used in the Act in specifying the period of time for making payment without committing a violation of the Act. "Full payment promptly," for the purpose of determining violations of the Act, means: (1) Payment of net proceeds for produce received on consignment or the pro-rata share of the net profits for produce received on joint account, within 10 days after the date of final sale with respect to each shipment, or within 20 days from the date the goods are accepted at destination, whichever comes first." 7 C.F.R. § 46.2 (aa)(1)

[2] FOB or "'[f]ree on board' is a method of shipping whereby goods are delivered at a destination location, usually a transportation depot, where legal title and thus the risk of loss passes from the seller to the buyer." *N. Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1578 n.2 (Fed. Cir. 1994) (citing Black's Law Dictionary 642 (6th

Therefore, the Court finds that not only has Grimmway established that it is a valid PACA beneficiary of the trust assets of $160,697.20 but it also properly preserved its right as required by the statute and its regulations.

### B. Individual Defendants' Liability

Grimmway seeks a default judgment against Cynthia Boynton and Brad Boynton arguing they are personally liable for B & B Organics' failure to maintain sufficient PACA trust assets to satisfy Grimmway's PACA trust claim. [DE 45 at 4–5]. PACA trust rights may be enforced through a court action for breach of fiduciary trust. 7 U.S.C § 499e(c)(5). This remedy has been held to permit recovery against both the corporation and its controlling officers. *See Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 705 (2d Cir. 2007) ("An individual who is in a position to control the assets of the PACA trust and fails to preserve them, may be held personally liable to the trust beneficiaries for breach of fiduciary duty."); *Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 421 (3d Cir. 2005) (holding individual officers and shareholders may be held individually liable for breaching their fiduciary duties under PACA); *Patterson Frozen Foods, Inc. v. Crown Foods Int'l, Inc.*, 307 F.3d 666, 669 (7th Cir. 2002) (recognizing that PACA permits recovery against both the corporation and its controlling officers); *Golman–Hayden Co. v. Fresh Source Produce, Inc.*, 217 F.3d 348, 351 (5th Cir. 2000) (holding that shareholders, officers, or directors who control assets may be held liable under PACA); *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997) ("PACA liability attaches first to the licensed seller of perishable agricultural commodities. If the seller's assets are insufficient to satisfy the liability, others may be found secondarily liable if they had some role in causing the corporate trustee to commit the breach of trust.") (internal quotations and citations omitted).

---

ed. 1990); U.C.C. § 2–319(1)).

7

"To determine personal liability, a court must determine: (1) whether an individual's involvement with the company was sufficient to establish a legal responsibility; and (2) whether the individual breached a fiduciary duty to the PACA creditors." *Sato & Co., LLC v. S & M Produce, Inc.*, 859 F. Supp. 2d 923, 927 (N.D. Ill. 2012). When determining whether an individual should be considered liable based on their involvement in the corporation, courts have looked at various factors such as whether the individual was a director (*Coosemans*, 485 F.3d at 706), had a role in causing the breach of trust (*Shepard v. K.B. Fruit & Vegetable*, 868 F. Supp. 703, 706 (E.D. Pa. 1994)), had control of the day-to-day operations (*Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 349–50 (S.D.N.Y. 1993)), signed for the company accounts (*Shepard*, 868 F. Supp. at 706), was the primary actor in failing to pay under PACA (*Bronia Inc. v. Ho*, 873 F. Supp. 854, 861 (S.D.N.Y.1995)), and the closely-held nature of the corporation or the individual's involvement with the management (*Sunkist*, 104 F.3d at 283). This is a fact-intensive question and the ability to control is core. "A formal title alone is insufficient—especially when faced with a small, 'mom and pop' corporation . . . where formalities may be less meaningful." *Bear Mountain Orchards, Inc. v. Mich-Kim, Inc.*, 623 F.3d 163, 172 (3d Cir. 2010).

The Court finds that based on these factors, that Ms. Boynton's involvement, control, and position over the trust assets held by B & B Organics created a fiduciary duty to preserve those PACA trusts and she breached that duty by failing to maintain the trust assets and failing to pay Grimmway, a PACA beneficiary. However, the Court finds that Grimmway has not alleged enough facts that Mr. Boynton had the requisite involvement or control over the PACA trust assets to establish a fiduciary duty and therefore, has not established that he is personally liable

for the past-due invoices. The Court addresses the personal liability of each Individual Defendant in turn.

### i. Defendant Cynthia Boynton

Grimmway's motion for default judgment argues that due to Ms. Boynton's capacity and position to control B & B Organics' operations and financial dealings, including those involving the PACA trust assets, she had a fiduciary duty to ensure that B & B Organics maintain sufficient trust assets to pay Grimmway. [DE 45 at 4–5]. Grimmway argues that because she breached that fiduciary duty by failing to pay the outstanding invoices, she is personally liable, as permitted by PACA, to Grimmway for $160,697.20 plus costs, interest, and attorneys' fees. Grimmway has provided sufficient evidence for the Court to conclude that Ms. Boynton's involvement with the company was sufficient to establish a legal responsibility and she breached the fiduciary duty she owed to Grimmway as a PACA trust beneficiary by failing to maintain sufficient trust assets, which she had control over.

First, during the relevant transactions at issue, Ms. Boynton was listed as "Principal" on B & B Organics' PACA license. [DE 1 at ¶ 48].[3] While title alone is insufficient, the Court acknowledges that her title is consistently and frequently documented as one of utmost importance. Not only is she listed as the "Principal" on B & B Organics' PACA license, but a Blue Book Services' Business Report lists her as the CEO and describes her as the sole officer and stockholder of B & B Organics. [DE 51-1 at 3]. Additionally, she signed B & B Organics' bankruptcy petition as President. Case No. 19-30729-hcd, [DE 1 at 4]. In Ms. Terry's declaration, she attested to the account history between Grimmway and B & B Organics and stated that Ms. Boynton was a recent contact in her dealings with B & B Organics. [DE 5-2 at 3].

---

[3] While Grimmway has not submitted B & B Organics' PACA license as evidence, "the court must assume that the factual allegations are, by reason of the default, true." *Muedini*, 55 F.3d at 265–66.

When Ms. Terry learned that B & B Organics did not have the funds to satisfy the outstanding balance with Grimmway and was waiting for approval for a new line of credit to pay past-due invoices, Ms. Boynton confirmed this information to Ms. Terry and another Grimmway employee. *Id.* Finally, in her response to the instant motion, Ms. Boynton stated she "owned the company 100%, and should be the bearer of all the burden." [DE 50 at 2].

The Court finds that the totality of this evidence establishes that Ms. Boynton's involvement with the corporation created a legal responsibility. B & B Organics is a closely held corporation and Ms. Boynton was at the top. In her response, she noted that she has been in "this industry for 38 years" and as a "small business owner . . . [she] believed and loved what she did." [DE 50 at 1-2]. The evidence, including her own statements, establishes that Ms. Boynton was closely involved in the day-to-day operations, while also being aware of and in control of the company's financial status. While Ms. Terry's declaration clearly demonstrates that others were involved in management of B & B Organics, Ms. Boynton owned the corporation, was involved in the operations, and had the capacity to control its finances, including the PACA assets. Accordingly, Ms. Boynton had a fiduciary duty to maintain Grimmway's PACA trust assets and breached that duty as evidenced by B & B Organics' failure to pay past-due invoices, severe financial jeopardy, excuses for non-payment, and acknowledgement that it had deficient funds to satisfy its outstanding balance to Grimmway.

Since the Court finds that Ms. Boynton is personally liable to Grimmway under PACA, the Court must next determine if a default judgment against her is warranted. On June 25, 2019, after failing to litigate this action in any way since she was served on April 5, 2019, Ms. Boynton responds to Grimmway's motion for default judgment, pro se, with three arguments. [DE 50]. The first argument is that Ms. Boynton "misunderstood the original filing" and was informed by

"[a]ll legal counsel . . . that bankrupt[c]y trumps all other cause[s] of action." *Id.* at 1. However, this is not a meritorious defense. Since no attorney has made an appearance on behalf of Ms. Boynton, she is likely referring to legal counsel for B & B Organics. While the advice of "bankrupt[c]y trumps all" is correct in terms of new or pending actions against B & B Organics, the debtor, it does not, however, impact the current action as it pertains to Ms. Boynton.

Although the Court finds that Grimmway is a valid PACA beneficiary of B & B Organics trust assets and properly preserved its right, B & B Organics has since filed a petition for Chapter 7 bankruptcy. Case No. 19-30729-hcd, [DE 1]. Section 362 of the Bankruptcy Code stays any action or proceedings against the debtor. 11 U.S.C. § 362(a)(1). Generally, the stay applies only to the debtor and not to non-debtor co-defendants. A narrow exception to the general rule provides the stay may be extended to non-debtors where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Matter of Fernstrom Storage & Van Co.*, 938 F.2d 731, 736 (7th Cir. 1991). "An illustration of such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case." *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986). There is no such situation here. Nor has the Court been made aware of any personal bankruptcy filing on behalf of either Ms. Boynton or Mr. Boynton and an independent search of the Bankruptcy Court of Northern Indiana docket reflects that neither has filed. Neither Individual Defendant has provided the Court with any evidence or argument pertaining to the need for such an exception to the automatic stay and accordingly, the Court does not find that this very narrow exception should be extended to Ms. or Mr. Boynton and Ms. Boynton's first argument fails.

Ms. Boynton's second argument is that "[a]ll vendors did not follow the PACA rules" and therefore "a wholesaler can't file under PACA if they did not follow the PACA rules." [DE 50 at 1]. However, as detailed *supra*, Grimmway properly preserved its PACA claim by including the required statutory language and the payment terms agreed to on every invoice. Ms. Boynton did not support her broad assertion that Grimmway did not follow PACA with any evidence and therefore the Court finds this an inadequate argument against default judgment.

The third argument relates to a filing made in the Bankruptcy proceeding for B & B Organics. On June 21, 2019, several creditors and beneficiaries under the trust provisions of PACA filed a motion for a Rule 2004 Examination of Debtor and Request for Production of Documents. Case 19-30729-hcd, [DE 33]; [DE 52-1]. Ms. Boynton questions whether she can be sued twice from the same company, Grimmway and references this bankruptcy filing as support [DE 50 at 1]. However, the Rule 2004 Motion is a bankruptcy procedure available to any party of interest to seek documents and information relating to B & B Organics' acts, conduct, property, liabilities, and financial information, all of which affects the administration of the B & B Organics' estate and does not impact this action against Ms. Boynton. *See* Fed. R. Bankr. P. 2004. As with the bankruptcy filing of B & B Organics, this Rule 2004 Examination does not extend to non-debtor defendants and therefore does not impact the instant case against Ms. Boynton.

Even still at the time of this Order, Ms. Boynton has not responded to Grimmway's Complaint. Ms. Boynton knew of this action for three weeks prior to B & B Organics filing of bankruptcy and did not request any type of extension from the Court. As B & B Organics' automatic stay does not pertain to the action against Ms. Boynton, and she has failed to present a meritorious defense against default judgment, the Court finds that by failing to plead or defend

this case, she has "exhibited a willful refusal to litigate the case properly" as evidenced by her "continuing disregard for the litigation and for the procedures of the court" and a "willful choice not to exercise even a minimal level of diligence." *Davis*, 321 F.3d at 646.

Therefore, the Court enters default judgment in Grimmway's favor against Ms. Boynton. However, in order to prevent Grimmway from recovering a windfall, the final judgment amount will be in the principal amount of $160,697.20, and consistent with the analysis below, taxable costs in the sum of $793.60, contractual attorneys' fees in the amount of $15,161.00 and contractual pre-judgment interest in the sum of $14,929.54 (through June 17, 2019, with additional daily interest accruing at $79.25 per day) <u>less any recovery made by Grimmway in B & B Organics' bankruptcy proceedings, Case No. 19-30729-hcd.</u>

    *ii. Defendant Brad Boynton*

Grimmway's motion for default judgment argues that due to Mr. Boynton's position as "Vice President/General Manager" he had control over B & B Organics' operations and financial dealings, including those involving the PACA trust assets and therefore he had a fiduciary duty to ensure that B & B Organics maintain sufficient trust assets to pay Grimmway. [DE 45 at 4–5].

In his pro se response to Grimmway's motion for default judgment, Mr. Boynton makes two arguments against entry of a default judgment. [DE 49]. His first argument has no merit. Mr. Boynton claims to have not been properly served the summons in this action because it was sent to the wrong address, however, the docket reflects differently. Mr. Boynton was personally served the summons on April 5, 2019 while he was at B & B Organics' business location as documented in the Proof of Service. [DE 10]. At this time, he was served with the Complaint, the *Ex-Parte* Motion for TRO, Motion for Preliminary Injunction, and the Court ordered TRO. *Id.* "A signed return of service constitutes prima facie evidence of valid service which can be

overcome only by strong and convincing evidence." *O'Brien*, 998 F.2d at 1398 (internal quotations omitted); *see also Relational, LLC v. Hodges*, 627 F.3d 668, 673 (7th Cir. 2010) (upon prima facie showing, "the burden shifted to [the defendant] to rebut, by strong and convincing evidence, the presumption of service"); *Homer v. Jones-Bey*, 415 F.3d 748, 752 (7th Cir. 2005) ("Once such a *prima facie* showing is made, the burden shifts to the defendant to demonstrate that service was not received."). Mr. Boynton makes a bald assertion that the summons was served to the wrong address. However, as Grimmway argues in its reply, it is possible that Mr. Boynton is confusing service of Grimmway's Complaint with service of the Intervening Complaint upon him. [DE 51 at 3; DE 10; DE 43]. An appearance has since been made on behalf of Mr. Boynton and he has filed an answer to the Intervening Complaints, however, he has still failed to answer Grimmway's Complaint, which he was personally served on April 5, 2019. [DE 10]. The Court does not find that Mr. Boynton has provided strong and convincing evidence that his service in this action was improper.

Mr. Boynton's second argument, albeit brief, holds more merit. Mr. Boynton argues that a personal judgment should not be entered against him because he was "only a[n] employee of the company and nothing more." [DE 49]. Additionally, Ms. Boynton's response further echoes this argument by stating that Mr. Boynton should be granted "relief from judgement [sic] as [she] owned the company 100%, and should be the bearer of all the burden." [DE 50 at 2]. As explained above, courts can look to several factors to determine if an individual should be considered secondarily liable to a PACA trust beneficiary for a breach of fiduciary duty. Grimmway has alleged and argued, that during the relevant time, since Mr. Boynton was listed as "Vice President/General Manager" on the Book Services Inc.'s Business Report, he was in a position to control B & B Organics' trust assets. [DE 1 ¶ 49; DE 51-1 at 3]. Grimmway provides

no additional facts or evidence to support its allegation. Grimmway's declaration from its accounts receivable manager, Ms. Terry, does not mention Mr. Boynton at all, particularly not as an employee with whom she or another Grimmway employee dealt with during the relevant period. [DE 5-2 at 3–4]. Aside from the listing on the Blue Book Services publication, none of Grimmway's filings provide any more than an unsupported argument that Mr. Boynton had control over the trust assets. The Court finds that Grimmway has not alleged enough facts to establish that Mr. Boynton had control over the PACA trust assets and therefore cannot be found to have breached a fiduciary duty. Since "[a] formal title alone is insufficient—especially when faced with a small, 'mom and pop' corporation . . . where formalities may be less meaningful," and Grimmway has presented no other evidence to support his role in the company, the Court denies the motion for default judgment against Mr. Boynton, but grants leave for Grimmway to refile and allege additional facts as to Mr. Boynton's involvement and position at B & B Organics as well as his control over the PACA assets. *Bear Mountain Orchards*, 623 F.3d at 172.

### *C. Grimmway's Entitlement to Attorneys' fees and prejudgment*

In its motion for default judgment, Grimmway argues that it is entitled to attorneys' fees in the amount of $15,161.00 and pre-judgment interest totaling $14,229.54 (through June 17, 2019, with additional daily interest accruing at $79.25 per day) along with its PACA trust claim. [DE 45 at 6; DE 45-2].

First, the Court must determine if attorneys' fees are recoverable from the Individual Defendants, rather than B & B Organics, under PACA. The Seventh Circuit has not yet addressed whether PACA should be interpreted to include a right to recover attorneys' fees in connection with its PACA claim. However, many of the courts that addressed the issue have found that if there is an enforceable agreement between the buyer and seller of produce, then

attorneys' fees and pre-judgment interest should be awarded as "*sums owing in connection with*" the trust transactions. 7 U.S.C §499e(c)(2) (emphasis added). *See Coosemans*, 485 F.3d at 709 (holding "where the parties' contracts include a right to attorneys' fees, they can be awarded as 'sums owing in connection with' perishable commodities transactions under PACA"); *Country Best v. Christopher Ranch, LLC*, 361 F.3d 629, 632 (11th Cir. 2004) (stating that the language in 7 U.S.C. § 499e(c)(2) "unambiguously encompasses not only the price of commodities but also additional related expenses . . . includ[ing] attorney fees and interest that buyers and sellers have bargained for in their contracts"); *Middle Mountain Land & Produce v. Sound Commodities*, 307 F.3d 1220, 1224 (9th Cir. 2002) (reasoning that "it cannot be contended seriously that interpreting PACA claims to include contractual rights to attorneys' fees and interest under the 'in connection with' language of the statute is contrary to the statute's purpose"); *Epic Fresh Produce, LLC v. Olympic Wholesale Produce, Inc.*, 2018 WL 6621325, at *7–8 (N.D. Ill. 2018) (finding attorneys' fees should be awarded to PACA beneficiaries however deferred any specific award of fees based on the stage of the case). The Court finds these cases persuasive. The agreement between Grimmway and B & B Organics explicitly states that in the event B & B Organics fails to make payments on time, finance charges will accrue on a past-due balance at the rate of 1.5% per month and in the event any action or proceeding is needed to enforce the terms of any transaction between the parties, B & B Organics agrees to pay all costs of enforcement, "including reasonable attorneys' fees, as additional sums owed in connection with the transaction." [DE 5-2 at 11].

Although the agreement was between Grimmway and B & B Organics, and the Individual Defendants did not sign the agreement personally, the Court finds that since PACA permits recovery of PACA assets from both the corporation and the directors (*see supra* Section

II.B) and attorneys' fees are included in this recovery of "sums owing in connection with" the produce transactions, a PACA beneficiary, like Grimmway, can recover reasonable attorneys' fees from liable individuals. Therefore, consistent with this opinion, Grimmway can recover reasonable attorneys' fees in connection with this action from Ms. Boynton, however Grimmway did not allege enough facts to recover fees from Mr. Boynton.

Second, the Court must determine if Grimmway, as the fee applicant, has reached its burden of "produc[ing] satisfactory evidence—in addition to the attorney's own affidavit[]—that the requested rates are in line with those prevailing in the community." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). If the fee applicant satisfies this burden, the burden shifts to the other party to offer evidence that sets forth "a good reason why a lower rate is essential." *Id.* (citations omitted). However, if the fee applicant does not satisfy its burden, the district court has the authority to make its own determination of a reasonable rate. *Id.* (citing *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 409 (7th Cir. 1999)). To then calculate reasonable fees, courts use the lodestar method, which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *see also Hall v. Forest River, Inc.*, No. 3:04-CV-259-RLM, 2008 WL 1774216, at *1 (N.D. Ind. Apr. 15, 2008). The fee applicant must also document its hours and hourly rates. *Hensley*, 461 U.S. at 437. Counsel is, "not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his expenditures." *Id.* at 437 n.12.

In the supporting affidavit and itemized accounting of fees [DE 45-2], counsel for Grimmway has indicated that two attorneys primarily litigated this case, while a paralegal

assisted. The two attorneys billed at a flat rate of $315.00 and $335.00 respectively.[4] The paralegal billed at a rate of $195.00. [DE 45-2 at 3]. Because the law firm Grimmway hired is located in Naples, Florida, Grimmway engaged local counsel. Local counsel billed at a rate of $300.00. Between March 2019 and June 10, 2019, the fees incurred in connection with enforcing Grimmway's statutory rights under PACA totals $15,161.00 plus costs of $793.60. *Id.* at 5–6.

In its affidavit, counsel confirms that "Grimmway is responsible for the attorneys' fees it incurred in this matter" [DE 45-2 at 4], which is evidence of the reasonableness of the fee request. *See Broaddus v. Shields*, 665 F.3d 846, 860 (7th Cir. 2011), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013) (holding "one of the best indicators of commercial reasonableness is a willingness to pay the fees without guaranteed reimbursement") (citing *Matthews v. Wis. Energy Corp.*, 642 F.3d 565, 573 (7th Cir. 2011)). Moreover, the Individual Defendants have not suggested that the hourly rate, the number of hours billed, or the nature of the charges are unreasonable. Nor have the Individual Defendants contested the manner in which the fees and expenses were calculated. And a challenger's failure to present any evidence challenging the fee applicant's request "is essentially a concession that the attorney's billing rate is reasonable and should be awarded." *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1313 (7th Cir. 1996). Accordingly, the Court finds that Grimmway has met its burden in proving that its billing rates and the number of hours billed are reasonable for the services rendered in successfully litigating this action and securing a default judgment against Ms. Boynton.

The Court notes that in its PACA Proof of Claim in the Bankruptcy proceeding, Grimmway requested attorneys' fees totaling $22,823.54 "through August 29, 2019." Case No.

---

[4] One attorney provided services at no charge for half an hour and another half-hour at a reduced rate of $195.00.

19-30729-hcd, [DE 95 at 2]. It is not entirely clear to the Court whether this total attorneys' fees include the fees associated with both this action as well as the bankruptcy proceedings. Similar to the Court's finding pertaining to the trust assets, the Court grants the reasonable attorneys' fees against Cynthia Boynton <u>less any fees recovered from the bankruptcy proceedings should the fees requested in those proceedings overlap with the representation of Grimmway in this instant action.</u>

### *D. Grimmway's Motion for Civil Contempt against B & B Organics*

Lastly, the Court addresses Grimmway's motion for civil contempt against B & B Organics for violating the TRO, filed April 17, 2019. [DE 13]. Grimmway filed this motion after B & B Organics ignored the direction in the Court's TRO which required Defendants to 1) produce the documents listed in Paragraph 4 to Grimmway's counsel; 2) file a Certificate of Service, stating which banking or financial institutions or third parties, if any, it served with the Injunction; and 3) account for its produce sales and the proceeds from these sales since April 5, 2019. Grimmway requests the Court to punish B & B Organics for its contempt by ordering it to show cause why the Court should not issue a civil contempt order and immediately comply with the TRO. No Defendant responded to the motion.

As explained above, on April 26, 2019, B & B Organics filed a petition for bankruptcy, triggering an automatic stay on all actions against the debtor. 11 U.S.C. § 362(a)(1). As of the time of this order, B & B Organics' bankruptcy action is still pending before the Bankruptcy Court for the Northern District of Indiana. Further, on July 11, 2019, the Bankruptcy Court granted Grimmway PACA Trust Beneficiaries Motion for a Rule 2004 Examination of Debtor, and Request for Production of Documents. Case No. 19-30729-hcd, [DE 47]. That motion encompasses a greater breadth of documents and information than those ordered by this Court.

Nothing on that docket reflects that B & B Organics failed to follow the Bankruptcy Court's Order to produce the requested documents. Accordingly, the Court denies Grimmway's motion for civil contempt against B & B Organics.

### III. CONCLUSION

For the reasons stated, the Court GRANTS in part and DENIES in part Grimmway's motion for default judgment against Cynthia G. Boynton and Brad B. Boynton. [DE 45]. The Court DENIES entry of final judgment against Brad B. Boynton and GRANTS Grimmway leave to refile and allege additional facts as to Mr. Boynton's involvement with and position at B & B Organics as well as his control over the PACA trust assets. The Court GRANTS Grimmway's motion in part and ENTERS final judgment in favor of Grimmway and against Defendant Cynthia G. Boynton in the principal amount of $160,697.20, along with taxable costs in the sum of $793.60, contractual attorneys' fees in the amount of $15,161.00 and contractual pre-judgment interest in the sum of $14,929.54 (through June 17, 2019, with additional daily interest accruing at $79.25 per day) <u>less any recovery made by Grimmway in B & B Organics' bankruptcy proceeding, Case No. 19-30726-hcd, and less any attorneys' fees recovered from that bankruptcy proceeding should the fees requested in those proceedings overlap with the representation of Grimmway in this instant action.</u> The Court DENIES Grimmway's motion for civil contempt against B & B Organics. [DE 13].

SO ORDERED.

ENTERED: March 25, 2020

                                            /s/ JON E. DEGUILIO
                                            Judge
                                            United States District Court